FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JILL JACKIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Enhanced Recovery Company, LLC, d/b/a Enhanced Resource Centers, d/b/a ERC,<br><br>Defendant. | No.   2:21-cv-00234-SMJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Before the Court, without oral argument, is Defendant's Motion to Dismiss, ECF No. 6. Defendant moves the Court to dismiss Plaintiff's claim under the Fair Debt Collection Practices Act, arguing that Defendant's disclosures of consumer debt-related information to a third-party mail vendor is permitted under the Act. After review of the motion and the file, the Court finds that Plaintiff has plausibly alleged a violation of the Act and denies Defendant's motion.

## BACKGROUND

Plaintiff Jill Jackin brings this class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., against Defendant Enhanced Recovery Company, LLC, on behalf of Washington consumers whose private debt-

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 1

related information was allegedly disclosed by Defendant to an unauthorized third party in the collection of the consumers' debt. ECF No. 1 at 1. At bottom, Plaintiff alleges that Defendant has a practice of providing protected consumer debt-related information to unauthorized third-party mail vendors in violation of the FDCPA. *See generally* ECF No. 1.

Plaintiff's grievance stems from a debt collection letter she received on January 13, 2021. *Id.* at 6. At some point, Plaintiff owed a consumer debt. *Id.* at 7; ECF No. 1-1 at 1. Defendant, a debt collector as defined under the FDCPA, attempted to collect on the debt. *Id.* The letter Plaintiff received on January 13, 2021 identified Defendant as a debt collector and stated: "[t]his is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose." *Id.* The letter identified the creditor to whom Plaintiff owed the debt, the account and reference numbers, and the amount of the debt. *Id.*; *see also* ECF No. 1-1 at 1.

Upon inspection of the letter, Plaintiff noticed that the return address did not match Defendant's address. ECF No. 1 at 7. In fact, the return address was a P.O. Box in Oaks, Pennsylvania, even though Defendant does not have a Pennsylvania address. *Id.* Upon further inspection, Plaintiff determined that the letter was sent by RevSpring, a third-party mail vendor and software company. *Id.* By providing RevSpring the letter, Defendant conveyed to RevSpring information regarding

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 2

1  Plaintiff and the debt owed—including Plaintiff's name and address, the amount of
2  the debt, the creditor of the debt, and other details. *Id.* at 9. RevSpring then printed
3  and mailed the letter to Plaintiff. *Id.* At no time did Plaintiff give Defendant consent
4  to disclose the information contained in the letter to RevSpring. *Id.* at 10.

5  Plaintiff alleges this practice violates the FDCPA and brings this action on
6  behalf of herself and others similarly situated. Defendant now moves to dismiss this
7  action, arguing that its use of a commercial mail vendor to collect consumer debts
8  does not violate the FDCPA. *See generally* ECF No. 6.

## LEGAL STANDARD

10  A complaint must contain "a short and plain statement of the claim showing
11 that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of
12 Civil Procedure 12(b)(6), the Court must dismiss the complaint if it "fail[s] to state
13 a claim upon which relief can be granted."

14 In deciding a Rule 12(b)(6) motion, the Court construes the complaint in the
15 light most favorable to the plaintiff and draws all reasonable inferences in the
16 plaintiff's favor. *Ass'n for L.A. Deputy Sheriffs v. County of Los Angeles*, 648 F.3d
17 986, 991 (9th Cir. 2011). Thus, the Court must accept as true all factual allegations
18 contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the
19 Court may disregard legal conclusions couched as factual allegations. *See id.*
20 //

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 3

To survive a Rule 12(b)(6) motion, the complaint must contain "*some* viable legal theory" and provide "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 562 (2007) (internal quotation marks and ellipsis omitted). Thus, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists where the complaint pleads facts permitting a reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged. *Id.* Plausibility does not require probability but demands more than a mere possibility of liability. *Id.*

While the complaint need not contain detailed factual allegations, threadbare recitals of a cause of action's elements, supported only by conclusory statements, do not suffice. *Id.* Whether the complaint states a facially plausible claim for relief is a context-specific inquiry requiring the Court to draw from its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

A.  **Fair Debt Collection Practices Act**

"The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors . . . .'" *Gonzales v. Arrow Fin. Servs.*, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). Under

the Act, without the prior consent of the consumer, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). Though the Act does not explicitly permit debt collectors to communicate debt-related information to third-party mail vendors, Defendant contends that disclosures to these commercial vendors are not actionable under the Act. ECF No. 9 at 3.

Upon review of the record, the Court finds that Plaintiff has adequately alleged a violation of 15 U.S.C. § 1692c(b) and has therefore plausibly stated a claim against Defendant. Section 1692c(b) broadly prohibits debt collectors from "communicat[ing] with third parties in connection with a consumer's debt." *Nichols v. GC Servs., LP*, No. CV-08-01491-PHX-FJM, 2009 WL 3488365, at *3 (D. Ariz. Oct. 27, 2009). While this prohibition is subject to several carefully defined exceptions, the statute does not explicitly provide an exception for commercial mail vendors.

The single question before this Court, then, is whether the FDCPA nonetheless exempts from liability debt collectors who transmit consumer debt-related information to mail vendors. Upon review of the record and the relevant legal authority, the Court finds that in enacting the FDCPA, Congress used

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 5

language that, on its face, bars debt collectors from communicating consumer-debt related information to mail vendors. As such, "the Court must assume that Congress meant what it said, and it will enforce the statute that way." *Khimmat v. Weltman, Weinberg & Reis Co.*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *1 (E.D. Pa. Feb. 7, 2022).

### 1.     Plain Meaning of the FDCPA

Defendant argues that it cannot be liable for violating Section 1692c(b) because it did not communicate with the mail vendor. ECF No. 6 at 6–7. Section 1692c(b) prohibits debt collectors from "communicat[ing]" with anyone other than those designated in the statute. While the FDCPA does not define "communicate," it does define a "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). "The statute does not define 'medium,' so the Court gives that word its ordinary meaning: 'a channel, method, or system of communication, information, or entertainment.'" *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *2.

With this in mind, the Court is satisfied that by transmitting details regarding Plaintiff's debt, Defendant communicated debt-related information to RevSpring. Defendant submits that communicating refers only to a collector's "active exchanges or transactions with a third party, and does not apply to a collector's

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 6

passive transmission of data to a vendor to process for a letter." ECF No. 6 at 7. The Court disagrees. The statute makes no distinction between an "active" and "passive" transmission of information, and the Court will not read one into the statute, particularly where such a reading would create line drawing issues and may permit disclosures of debt-related disclosures that Congress intended to prohibit. Regardless, here, Defendant directly conveyed information regarding Plaintiff's debt to RevSpring—namely, Plaintiff's name and address, the amount of the debt, the creditor of the debt, and other details such as the account number. That this transmission may not have been an "active transaction" is of no consequence.

Defendant also contends that the Act's definition of "communication" indicates "a distinction between a 'person' and a 'medium,'" such that the terms must be mutually exclusive. ECF No. 6 at 7. In other words, Defendant asks this Court to define communication as requiring "two types of participants—those who receive communications, i.e., a 'person,' and those through whom communications are made, i.e., a 'medium.' *Id.* at 8. Though inadequately explained, the Court understands Defendant's argument to be advancing the contention that RevSpring is not a person within the meaning of the statute, but rather, is a medium. This distinction, Defendant submits, compels the Court to find that communications though a medium only are permitted by the Act.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 7

The Court disagrees with this strained reading of the statute's text. First, common sense dictates that Congress intended the term "medium" to refer to "the mechanical means of communication—a telephone, telegram, or, in more modern terms, email or file transfer." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *3. Considering the context of the FDCPA, it is likely that the term "medium" refers to a means of transmission—for example, via telephone or email, "rather than to an intermediary that might (or might not) be present." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *3 (E.D. Pa. Feb. 7, 2022). Second, Defendant's proposed meaning ignores a significant interpretive problem. Section 1692c(b) prohibits a debt collector's communication "with any person other than…the consumer [or] his attorney," among other exceptions. 15 U.S.C. § 1692c(b). Defendant's proposed definition of the term "medium" would include a consumer's attorney, as an attorney is a person through whom communications are made.

If the Court were to adopt Defendant's proposed meaning, § 1692c(b)'s "with any person other than" clause would be unintelligible. *Hunstein v. Preferred Collection & Mgmt. Servs.*, 17 F.4th 1016, 1034 (11th Cir.), *reh'g en banc granted*, *opinion vacated*, 17 F.4th 1103 (11th Cir. 2021); *see also Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *3. For these reasons, the Court finds that

Defendant's transmission of Plaintiff's debt information to RevSping, whether passive or not, constitutes a communication as defined under the FDCPA.

**2.    Agency Relationship**

Next, Defendant argues that its disclosures to RevSpring are protected because RevSpring is Defendant's agent. ECF No. 6 at 3–4. As an initial matter, aside from Defendant's own characterization, the Court has no basis to conclude an agency relationship exists between the two entities. "Agency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (internal quotation marks omitted).

It is entirely unclear from Defendant's briefing whether and to what extent RevSpring acted on Defendant's behalf, whether there was the requisite manifestation of assent, or to what extent RevSpring was subject to Defendant's control. It is legally irrelevant that Defendant simply defines RevSpring as its agent because "[w]hether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Id.* The Court therefore cannot conclude an agency relationship exists between the entities.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 9

And to be sure, even if the Court were to find an agency relationship, Defendant ignores an obvious problem the statutory text poses to their argument. Section 1692c(b) provides six exceptions to the general prohibition on debt collectors communicating with others in connection with a debt. *See generally* 15 U.S.C. 1692c(b). "Three of these exceptions are for attorneys, who have an agency relationship with their clients." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *4. It makes little sense for Congress to expressly exempt some agents if Congress did not intend that statute's prohibition to generally apply to agents unless a specific exemption applied. Otherwise, Congress would not have specifically exempted attorneys in the text of the statute. "And by specifying some, the doctrine of *expressio unius est exclusion alterius* teaches that Congress intended to exclude other agents from the exemption." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *4 (emphasis in original).

Defendant suggests *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), is dispositive of the legal issue before the Court. There, the Supreme Court considered whether inaccuracies in internal credit files were "published" so as to harm the plaintiffs and confer standing. *Id.* at 2210. In a footnote, the Supreme Court noted that plaintiffs argued for the first time that the defendant, a credit reporting agency, "published" the plaintiffs' information internally to mail vendors. *Id.* at 2210 n.6. After finding the plaintiffs' forfeited this argument, the Court noted that courts have

not "necessarily recognized disclosures to printing vendors as actionable publications." *Id.* But this language is dicta and merely descriptive of what other courts have recognized. As such, it does not carry the weight Defendant suggests.

### 3. Regulatory Guidance

Finally, Defendant proffers that "[t]he FTC and CFPB have approved collectors' use of outside vendors to send collection communications." ECF No. 6 at 10. In support, Defendant notes that FTC Staff Commentary ("Commentary") on the FDCPA indicates that a collector's agent may give a consumer notice of debt, so long as it is clearly indicated that the notice is on behalf of the debt collector. ECF No. 6 at 10; *see also* Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02, 50108. The Commentary provides similar support for incidental contacts with a telephone operator or a telegraph clerk. *Id.* at 50104. Again, though, the Court cannot conclude that Defendant and RevSpring are in an agency relationship. And telephone operators and telegraph clerks work for "wire-based, regulated entities," which are fundamentally different from mail vendors. *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *6. Moreover, providing an entity with specific details concerning a consumer's debt is more than incidental contact and clearly distinguishable from the minimal contact endorsed in the Commentary. Lastly, Defendant suggests that because the FTC has not taken enforcement action against

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 11

debt collectors who outsource to mail vendors, it must approve of the practice. But even if it were true that the lack of enforcement action was implicit approval, rather than merely a reflection of the agency's limited resources and enforcement priorities, its enforcement practices are not dispositive of the Court's interpretation and carry little weight.

Defendant's reliance on CFPB guidance is similarly unavailing. Here, too, Defendant makes much of the fact that the CFPB has not expressed concern over debt collectors using mail vendors. See ECF No. 6 at 12. Again, the Court will not opine on the CFPB's regulatory priorities and will certainly not assume from its inaction in this area that it supports the practice. Defendant also submits that the CFPB has approved of a debt collector disclosing a vendor's mailing address if the vendor accepts disputes and requests for original-creditor information. *Id.* But providing a *vendor's* mailing address is clearly different from providing a *consumer's* debt information. And "[a] debt collector receiving information from a consumer through a letter vendor is not the same as a debt collector communicating information to or through a letter vendor." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *5.

For these reasons, the guidance cited by Defendant does not directly bear on the legal issue involved here and the Court declines to treat the FTC's and CFPB's actions as dispositive.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS – 12

### 4. First Amendment

In its reply brief, Defendant submits that barring debt collectors from using mail vendors to communicate with consumers would unconstitutionally burden commercial speech. ECF No. 13 at 5. "The FDCPA restricts debt collectors' ability to engage in certain types of speech." *Khimmat*, No. 2:21-CV-02944-JDW, 2022 WL 356561, at *5. In order for restrictions on non-misleading commercial speech to pass constitutional muster, the restriction must directly advance a substantial government interest and be no more extensive than is necessary to serve that interest. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 821 (9th Cir. 2013). Here, the Court finds that the government has a substantial interest in protecting consumers' privacy and limiting the number of persons or entities privy to a consumer's debt information. The FDCPA's prohibition on debt collectors sharing consumers' debt information with mail vendors is no more extensive than is necessary, as the statute provides a number of disclosure exceptions that enable debt collectors to attempt to collect debts. Section 1962c(b) permits debt collectors to communicate directly with the consumer, the consumer's attorney, consumer reporting agencies, the creditor, and the attorney of the creditor or debt collector, or anyone else with the consumer's consent. These exemptions are sufficient to allow debt collectors to serve their purpose without unduly invading the consumer's privacy by disclosing their often-sensitive debt information, and the Court has no authority to expand those

exemptions. As such, the Court finds that Section 1962c(b) does not unconstitutionally restrict commercial speech and rejects Defendant's First Amendment challenge on this basis.

## CONCLUSION

The Court recognizes the economic burden that its holding may have on Defendant, as Defendant can no longer legally outsource its collection efforts to commercial mail vendors in the same manner. But the Court must take Congress at its word, which here bars Defendant's outsourcing practice. The statute explicitly provides for several disclosure exemptions, but mail vendors are not included in those exemption. The Court therefore denies Defendant's motion to dismiss.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, **ECF No. 6**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 10th day of June 2022.

_____
SALVADOR MENDOZA, JR.
United States District Judge